[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13702
Non-Argument Calendar
_____

Agency No. A087-579-421

ELIAS GASTON MARTINIC REYES,
GINA URSULA OBANDO SANCHEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 30, 2014)

Before PRYOR, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Elias Gaston Martinic Reyes,[1] a native and citizen of Bolivia, seeks review of an order of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) denial of his application for asylum and withholding of removal, 8 U.S.C. §§ 1158(a), 1231(b)(3).[2]  Reyes argues the BIA erred by concluding he did not suffer past persecution and, consequently, by requiring him to establish he could not reasonably relocate to another part of Bolivia.  Upon review of the record and consideration of the parties' briefs, we deny the petition for review.

We review for substantial evidence the agency's conclusion that a petitioner did not experience harm amounting to persecution.  *See Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332-33 (11th Cir. 2010); *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230-31 (11th Cir. 2005).  Under the substantial evidence test, "we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  *Diallo*, 596 F.3d at 1332 (quotation omitted).  We will overturn the agency's order only if the record compels reversal, and "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal."  *Id.* (quotation omitted).

---

[1] Reyes's wife, Gina Ursula Obando Sanchez, was listed as a derivative applicant on his application for immigration relief.  For convenience, we refer only to Reyes, but our decision is equally applicable to Obando Sanchez.

[2] Reyes also sought relief under the Convention Against Torture.  Reyes, however, has abandoned that claim because he does not raise any argument on the issue in his initial brief.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

The record does not compel reversal of the agency's conclusion that the harm Reyes suffered in Bolivia on account of his political opinion and work for the National Revolutionary Movement (MNR) did not amount to persecution. *See id.* The record establishes that in May 2005, three or four people who belonged to the political party opposed to the MNR pushed Reyes against a wall, pressed against his neck, pulled his tie tight, and, after cutting his tie, threatened him that next time they would cut off his head. In December 2005, while at a campaign event, Reyes was punched and kicked after he tried to defend his wife from members of the opposition party who pushed her. Reyes received one or two stiches following the assault. In May 2006, protestors shouted at Reyes and threw rocks at him, which hit him on the back, legs, and head, resulting in a cut on his head.

Throughout the year in 2007, Reyes received one or two threatening calls per week at his office, and a sign on the office door was destroyed. In June 2008, as Reyes was driving his car, he was intercepted by a van from which three men emerged. They hit him once in the head with a heavy object and then departed. In January 2009, while Reyes was examining his car's battery, two people in a white vehicle unsuccessfully tried to force Reyes's wife out of the car and they also shouted at him.

Considered cumulatively, these events do not rise to the extreme level of persecution. *See Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1235-36 (11th Cir. 2013)

(explaining this Court evaluates the harms a petitioner suffered cumulatively and determines what constitutes persecution under the totality of the circumstances on a case-by-case basis). We have held that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation," and that "[m]inor physical abuse and brief detentions do not amount to persecution." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1353 (11th Cir. 2009) (quotations and alteration omitted). Thus, we have held that a 36-hour detention and being beaten with a belt and kicked, resulting in multiple scratches and muscle bruises, did not compel a finding of persecution. *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1171, 1174 (11th Cir. 2008). Similarly, we have concluded a five-hour interrogation and beating, coupled with a four-day detention, did not compel a finding of persecution. *Kazemzadeh*, 577 F.3d at 1352-53. In addition, threats in conjunction with a minor beating do not compel the conclusion that a petitioner suffered past persecution. *Djonda*, 514 F.3d at 1174. Here, Reyes suffered several incidents of minor physical abuse and harassment, but we cannot say the record compels a finding that he suffered past persecution.

Because Reyes did not suffer past-persecution, he did not have a presumption of a well-founded fear of future persecution. *See Kazemzadeh*, 577 F.3d at 1351 ("An applicant who has been found to have established such past persecution shall also be presumed to have a well-founded fear of persecution on

4

the basis of the original claim." (quotation omitted)).  Accordingly, contrary to Reyes's arguments, the Government did not have to rebut that presumption by establishing Reyes could avoid future persecution by relocating to another part of the country.  *See id.* at 1351-52.  Instead, Reyes bore the burden of proving he faced a reasonable probability of persecution if he returned to Bolivia.  *See id.* at 1352.  As we have explained, "[a]n applicant does not have a well-founded fear of persecution if the applicant could avoid future persecution by relocating to another part of the applicant's country of nationality if under all the circumstances, it would be reasonable to expect the applicant to do so," and it is the applicant's burden to prove it would not be reasonable for him to relocate.  *Id.* (quotations and ellipses omitted).[3]  Reyes therefore bore the burden of establishing relocation within Bolivia was not reasonable, but he failed to carry that burden.

Reyes's claim that relocation was not reasonable was contradicted by evidence that his daughter remained in Bolivia unharmed and that he and his wife experienced no harassment or trouble while staying with his sister who lived 20 to 30 minutes away from the Reyes' home in La Paz.  *See Ruiz v. U.S. Att'y Gen.*, 440

---

[3] Reyes does not argue in his initial brief and has not demonstrated that he fears persecution by the government or that any persecution would be government-sponsored. Accordingly, no presumption existed that relocation would be unreasonable.  *See Kazemzadeh*, 577 F.3d at 1352 ("The applicant bears the burden of proving that it would not be reasonable for him to relocate, unless the persecution is by a government or is government-sponsored, in which case relocation is presumed to be unreasonable unless the government establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate." (quotations, citation, and brackets omitted)).

F.3d 1247, 1259 (11th Cir. 2006) (concluding a petitioner's claim he could not relocate within a country "was contradicted by his testimony that his son and his parents have remained unharmed in the region of [the country] where [the petitioner] allegedly was threatened").  Because Reyes did not establish he was entitled to asylum relief, he could not make the higher showing necessary to obtain withholding of removal.  *See Kazemzadeh*, 577 F.3d at 1352 ("Where an applicant is unable to meet the well-founded fear standard of asylum, he is generally precluded from qualifying for either asylum or withholding of removal." (quotations and brackets omitted)).

For the foregoing reasons, we deny Reyes's petition for review.

**PETITION DENIED.**